**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JORGE CARRILLO-HERNANDEZ,

    Defendant - Appellant.

No. 18-3190
(D.C. No. 2:17-CM-80076-JAR-TJJ-1)
(D. Kan.)

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JORGE CARRILLO-HERNANDEZ,

    Defendant - Appellant.

No. 18-3192
(D.C. No. 2:17-CR-20024-JAR-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

\*    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Before **HOLMES, MURPHY,** and **CARSON,** Circuit Judges.

---

This matter comes before us on an *Anders* brief. Counsel for Jorge Carrillo-Hernandez filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), requesting leave to withdraw as counsel. The brief identified four possible arguments that Mr. Carrillo-Hernandez might pursue on appeal: (1) his conviction is invalid because his guilty plea was involuntary, (2) his sentence for his conviction for an immigration-related offense is procedurally and substantively unreasonable under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") and 18 U.S.C. § 3553, (3) his supervised-release violation is invalid because it was based on his purportedly invalid guilty plea, and (4) his sentence stemming from the revocation of his supervised-release term is procedurally and substantively unreasonable. After considering the *Anders* brief—as well as doing an independent examination of the entire record—we conclude that there are no non-frivolous grounds for appeal. We therefore **grant** the motion to withdraw and **dismiss** the appeal.

**I**

**1**

Mr. Carrillo-Hernandez, a citizen of Mexico, has spent much of his life illegally in the United States. And, since 2003, he has been convicted of several crimes and deported four times. He was convicted on July 24, 2003 of aggravated

battery and subsequently deported to Mexico on September 26, 2003. He was then arrested on March 27, 2006 for a probation violation and served more than twenty-eight months in prison. On November 20, 2007, he was convicted of illegal reentry after deportation for an aggravated felony and was again deported on August 7, 2009. Then, on March 3, 2011, he was arrested for a supervised-release violation. Here, again, he served a term of imprisonment and was deported—for the third time—on February 3, 2012.

Sometime after this third deportation in 2012, Mr. Carrillo-Hernandez illegally reentered the United States. After his discovery and arrest, he was charged and convicted of an illegal-reentry offense in the U.S. District Court for the Southern District of Texas and sentenced to a term of sixty months' imprisonment and three-years' supervised release. After serving his prison sentence, Mr. Carrillo-Hernandez was deported for the fourth time on July 12, 2016. He again reentered the country and was arrested in April 2017—this time for driving under the influence of alcohol in Kansas City, Kansas.

In May 2017, a federal grand jury in the U.S. District Court for the District of Kansas returned an indictment, charging Mr. Carrillo-Hernandez with an illegal-reentry offense—specifically, with illegally reentering the country after being removed subsequent to an aggravated-felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). The federal court in the Southern District of Texas

transferred jurisdiction over the supervised-release violation to the District of Kansas.

In November 2017, Mr. Carrillo-Hernandez pleaded guilty without a written plea agreement to the charged illegal-reentry offense. During his plea colloquy, the federal district court in Kansas confirmed that he understood the charges against him and his right to a jury trial. The district court also questioned him about the voluntariness of his plea, and Mr. Carrillo-Hernandez testified that he was entering the plea knowingly and voluntarily. The court also explained the potential maximum sentence for his offense. Mr. Carrillo-Hernandez raised no objection to the sufficiency of the court's guilty-plea colloquy. Satisfied that Mr. Carrillo-Hernandez's plea was knowingly and voluntarily entered, the district court accepted his guilty plea. Mr. Carrillo-Hernandez never attempted to withdraw his guilty plea.

**2**

The Presentence Investigation Report ("PSR") calculated Mr. Carrillo-Hernandez's total offense level to be seventeen and his criminal-history category to be VI. This led to a Guidelines advisory range of fifty-one to sixty-three months' imprisonment, with a statutory maximum term of imprisonment of twenty years for the illegal-reentry violation. *See* 8 U.S.C. § 1326(b)(2).

The PSR also included two specific offense enhancements. First, the PSR applied a four-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Mr. Carrillo-Hernandez committed the instant offense after his prior November 20, 2007 conviction of illegal reentry. Second, the PSR applied an eight-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(2)(B) because—prior to Mr. Carrillo-Hernandez's first deportation from the United States—he was convicted of a felony offense with at least a two-year sentence, namely his July 24, 2003 conviction for aggravated battery.

The probation officer also submitted a violation report, detailing two supervised-release violations following his June 17, 2016 release from custody. Recall that at the time he was charged with the instant illegal-reentry offense, Mr. Carrillo-Hernandez was on a three-year period of supervised release. As part of his supervised release, he was subject to both mandatory and special conditions. The probation officer calculated a grade B violation arising from a mandatory condition of his supervised release—specifically, that Mr. Carrillo-Hernandez not commit another federal, state, or local crime. In addition, the probation officer calculated a grade C violation stemming from a special condition of his supervised release—specifically, that Mr. Carrillo-Hernandez not illegally re-enter the United States and that he report to the U.S. Probation Office immediately if he did enter the United States.

The operative supervised-release violation for sentencing purposes under the Guidelines was the one graded B—the "most serious grade." *See* U.S.S.G. § 7B1.1(b), p.s. A grade B supervised-release violation, when combined with Mr. Carrillo-Hernandez's criminal-history category of VI, resulted in an advisory Guidelines range of twenty-one to twenty-seven months' imprisonment. *See* U.S.S.G. § 7B1.4(a), p.s. The maximum statutory prison term that Mr. Carrillo-Hernandez faced for the supervised-release violation was twenty-four months' imprisonment. *See* 18 U.S.C. §§ 3583(e)(3), 3559(a)(3); 8 U.S.C. § 1326(a), (b)(2).

**3**

In his sentencing memorandum, Mr. Carrillo-Hernandez requested a downward departure, pursuant to U.S.S.G. § 2L1.2 cmt. n.7 (2016), based on his alleged cultural assimilation into the United States. The government opposed this request. The district court then considered the matter at a sentencing hearing. There, Mr. Carrillo-Hernandez discussed his history and connection to the United States. For example, he explained that his parents brought him here before the age of one and that he has lived in the U.S. for most of his life. He spent his childhood in California, graduated from high school in Washington, and moved to Kansas thereafter. He also testified that he has two children living in Kansas

City.  The government—focusing on Mr. Carrillo-Hernandez's extensive criminal

record—opposed any downward departure.

The district court denied the downward-departure request.  In doing so, the

court considered and applied the three criteria for a cultural-assimilation

downward departure:

> [1] the defendant formed cultural ties primarily with the
> United States from having resided continuously in the United
> States from childhood, [2] those cultural ties provided the
> primary motivation for the defendant's illegal reentry or
> continued presence in the United States, and [3] such a
> departure is not likely to increase the risk to the public from
> further crimes of the defendant.

U.S.S.G. § 2L1.2 cmt. n.7.  The district court found that the first two criteria were

present.  In this regard, the court considered Mr. Carrillo-Hernandez's long

history of living here and his family ties as evidence of both his cultural ties with

the United States and his resulting motivation for returning illegally.  But the

court found that the third criterion did not "weigh in Mr. Carrillo's favor."  R.,

Vol. V, at 27–28 (Tr. Sent'g & Final Revoc'n Hr'g, dated Aug. 27, 2018).

Focusing on his extensive criminal history, the district court denied Mr.

Carrillo-Hernandez's request for a downward departure.

After thoroughly considering the sentencing factors under 18 U.S.C.

§ 3553, the district court sentenced Mr. Carrillo-Hernandez to fifty-seven months'

imprisonment for his illegal-reentry offense. In support of its sentence, the court

reasoned as follows:

> I strongly considered sentencing Mr. Carrillo to the top of the
> guidelines given this extensive history of illegal re-entries and
> renewed criminal behavior, but I decided to sentence him to
> the middle of the guidelines, recognizing that he met three
> out of the four factors for cultural assimilation, did not meet
> the fourth factor, which is a very important factor for a
> downward departure. But I did take that into consideration in
> determining that his sentence is appropriately fixed in the
> middle of the range.

R., Vol. V, at 34.

As for his supervised-release violations, which were based on his prior

guilty plea to the illegal-reentry offense, Mr. Carrillo-Hernandez did not

challenge the factual basis of his alleged violations, and the court found that he

had committed those violations. Having considered the relevant § 3553 factors

and the Guidelines, the court sentenced him to a term of imprisonment of twenty-

four months based on his violations of supervised release. And, specifically

acknowledging "a need to fashion" a sentence with the necessary "deterrent effect

and to protect the public," the court ordered the terms of imprisonment for the

illegal-reentry offense and the supervised-release violation to run consecutively.[1]
*Id.* at 52.

Mr. Carrillo-Hernandez filed a timely notice of appeal.

**II**

Counsel for Mr. Carrillo-Hernandez filed a brief pursuant to *Anders v. California*, and now moves to withdraw as counsel. As required by *Anders*, counsel filed a brief with this court "referring to anything in the record that might arguably support the appeal," 386 U.S. at 744, and represented that a copy of the brief would be mailed to the defendant, *Anders* Br. at 26. Mr. Carrillo-Hernandez, despite thereby being advised of his right to file a pro se supplemental brief, has failed to do so.

The *Anders* brief identified four arguments that Mr. Carrillo-Hernandez might possibly pursue on appeal: (1) his illegal-reentry conviction is invalid because his guilty plea was involuntary, (2) his illegal-reentry sentence is procedurally and substantively unreasonable, (3) his supervised-release violation

---

[1] In connection with the imposition of the consecutive sentences, the district court also expressly recognized that the Guidelines recommend such sentences where a defendant is sentenced to a term of imprisonment based on a revocation of the defendant's supervised-release term. *See* R., Vol. V, at 49 ("The guidelines and the policy statements of the guidelines are the basis I think for ordering that this to be [sic] served consecutively."); *see also* U.S.S.G. § 7B1.3(f), p.s. (noting that any term of imprisonment for a revocation of supervised release "shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving").

is invalid because it was based on his purportedly invalid plea, and (4) his supervised-release revocation sentence is procedurally and substantively unreasonable.

We must "conduct a full examination of the record to determine whether defendant's claims are wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). If they are, we may grant counsel's motion to withdraw and dismiss the appeal.

## III

After an independent review of the record, we conclude that there are no non-frivolous grounds for appeal. More specifically, we have considered the four areas identified in the *Anders* brief and have determined that they lack legal merit. Put affirmatively, any appellate argument challenging Mr. Carrillo-Hernandez's guilty plea or sentences would be frivolous. Therefore, we **GRANT** counsel's motion to withdraw and **DISMISS** Mr. Carrillo-Hernandez's appeal.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

-10-